IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT ANCHORAGE

Tanadgusix Corporation, et. al.

_____
                        Plaintiff(s),
vs.

ARM, Ltd.

_____
                        Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 3AN-18- **8775**          CI

**SUMMONS AND
NOTICE TO BOTH PARTIES
OF JUDICIAL ASSIGNMENT**

To Defendant: <u>ARM, Ltd. c/o William Mitchell, Registered Agent</u>

You are hereby summoned and required to file with the court a written answer to the complaint
which accompanies this summons. Your answer must be filed with the court at 825 W. 4th
Ave., Anchorage, Alaska 99501 within 20 days* after the day you receive this summons. In
addition, a copy of your answer must be sent to the plaintiff's attorney or plaintiff (if
unrepresented) <u>Natalie A. Cale, Holmes Weddle & Barcott, P.C.</u>, whose address is:
<u>701 W. 8th Avenue, Suite 700, Anchorage, AK 99501</u>.

If you fail to file your answer within the required time, a default judgment may be entered
against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in
this case, in writing, of your current mailing address and any future changes to your mailing
address and telephone number. You may use court form *Notice of Change of Address /
Telephone Number* (TF-955), available at the clerk's office or on the court system's website at
https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf to inform the court. - OR - If you
have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

NOTICE OF JUDICIAL ASSIGNMENT

TO: Plaintiff and Defendant

You are hereby given notice that:

[X] This case has been assigned to Superior Court Judge *Rindner*
    and to a magistrate judge.

[ ] This case has been assigned to District Court Judge _____.

CLERK OF COURT

___8/21/18___
      Date

By: ___Van Vu___
        Deputy Clerk

I certify that on _8/21/18_ a copy of this Summons was [ ] mailed [X] given to
[ ] plaintiff [X] plaintiff's counsel along with a copy of the
[ ] Domestic Relations Procedural Order [ ] Civil Pre-Trial Order
to serve on the defendant with the summons.
Deputy Clerk ___VV___

* The State or a state officer or agency named as a defendant has 40 days to file its answer. If
you have been served with this summons outside the United States, you also have 40 days to
file your answer.

CIV-100 ANCH (10/17)(cs)                                    Civil Rules 4, 5, 12, 42(c), 55
SUMMONS

Case 3:18-cv-00219-HRH   Document 1-1   Filed 09/24/18   Page 1 of 22   Exhibit A
Page 1 of 22

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT ANCHORAGE

Tanadgusix Corporation, et. al.

_____
                    Plaintiff(s),

vs.

ARM, Ltd.

_____
                    Defendant(s).

CASE NO. 3AN-18- 8775 _____ CI

**SUMMONS AND
NOTICE TO BOTH PARTIES
OF JUDICIAL ASSIGNMENT**

To Defendant: <u>ARM, Ltd. c/o William Mitchell, Registered Agent</u>

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at 825 W. 4th Ave., Anchorage, Alaska 99501 within 20 days* after the day you receive this summons. In addition, a copy of your answer must be sent to the plaintiff's attorney or plaintiff (if unrepresented) <u>Natalie A. Cale, Holmes Weddle & Barcott, P.C.</u>, whose address is: <u>701 W. 8th Avenue, Suite 700, Anchorage, AK 99501</u>.

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf to inform the court. - OR - If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

NOTICE OF JUDICIAL ASSIGNMENT

TO: Plaintiff and Defendant

You are hereby given notice that:

☒ This case has been assigned to Superior Court Judge <u>Rindner</u>
and to a magistrate judge.

☐ This case has been assigned to District Court Judge _____.

CLERK OF COURT

_8/21/18_
Date

By: _Van Vu_
Deputy Clerk

I certify that on _8/21/18_ a copy of this Summons was ☐ mailed ☒ given to
☐ plaintiff ☒ plaintiff's counsel along with a copy of the
☐ Domestic Relations Procedural Order ☐ Civil Pre-Trial Order
to serve on the defendant with the summons.
Deputy Clerk _VV_

* The State or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

CIV-100 ANCH (10/17)(cs)                          Civil Rules 4, 5, 12, 42(c), 55
SUMMONS Case 3:18-cv-00219-HRH   Document 1-1   Filed 09/24/18   Page 2 of 22 Exhibit A
                                                                      Page 2 of 22

HOLMES WEDDLE & BARCOTT, P.C.
Natalie A. Cale
Co-Counsel for Tanadgusix Corporation and
Ron Philemonoff, Jeanette Matthews, Robert Dean Hughes, Benjamin English, Larry
Cooper, and John Lyons, Trustees of the Tanadgusix Corporation Health and Welfare
Trust.
701 W. 8th Avenue, Suite 700
Anchorage, Alaska 99501
Telephone: (907) 274-0666
Fax: (907) 277-4657
Email: ncale@hwb-law.com

LAW OFFICE OF DOUGLAS F. STRANDBERG, P.S.
Douglas F. Strandberg
Co-Counsel for Tanadgusix Corporation and
Ron Philemonoff, Jeanette Matthews, Robert Dean Hughes, Benjamin English, Larry
Cooper, and John Lyons, Trustees of the Tanadgusix Corporation Health and Welfare
Trust
P. O. Box 547
Friday Harbor, Washington 98250
Telephone: (360) 378-3390
Fax: (360) 378-3490
Email: dfslaw@centurylink.net

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
## THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| TANADGUSIX CORPORATION, an Alaska Native village corporation, and Ron Philemonoff, Jeanette Matthews, Robert Dean Hughes, Benjamin English, Larry Cooper, and John Lyons, Trustees of the Tanadgusix Health and Welfare Trust )<br><br>Plaintiffs, )<br><br>v. )<br><br>ARM, Ltd., an Illinois corporation, )<br><br>Defendant. ) | COPY<br>Original Received<br><br>AUG 2 1 2018<br><br>Clerk of the Trial Courts<br><br>No. 3AN-18-_____ Civ. |

Complaint
*Tanadgusix Corporation and Ron Philemonoff, Jeanette Matthews, Robert Dean Hughes, Benjamin English, Larry
Cooper, and John Lyons, Trustees of the Tanadgusix Health and Welfare Trust v. ARM, Ltd*
Case No. 3AN-18-_____ Civ.
Page No. 1 of 18

# COMPLAINT
## BY TANADGUSIX CORPORATION AND
### RON PHILEMONOFF, JEANETTE MATTHEWS, ROBERT DEAN HUGHES, BENJAMIN ENGLISH, LARRY COOPER, AND JOHN LYONS, TRUSTEES OF THE TANADGUSIX CORPORATION HEALTH AND WELFARE TRUST

Tanadgusix Corporation ("TDX") and Ron Philemonoff, Jeanette Matthews, Robert Dean Hughes, Benjamin English, Larry Cooper, and John Lyons, Trustees of the Tanadgusix Corporation Health and Welfare Trust, (Collectively, "the Trust"), hereby assert the following claims against ARM, Ltd. ("ARM").

### Parties

1.     TDX is an Alaska corporation organized under the Alaska Native Claims Settlement Act ("ANCSA"). TDX' principal business offices are located in Anchorage, Alaska.

2.     TDX has satisfied all of the conditions precedent to its right to assert its Claims in this case, including the payment of all required corporate taxes and the filing of all required corporate reports.

3.     Ron Philemonoff, Jeanette Matthews, Robert Dean Hughes, Benjamin English, Larry Cooper, and John Lyons are the current Trustees of the Tanadgusix Corporation Health and Welfare Trust.

4.     The Tanadgusix Corporation Health and Welfare Trust is an IRS 509 (c)(9) voluntary employees' beneficiary association and trust. The Trust's principal business offices are located in Anchorage, Alaska.

5.     The Trust has satisfied all of the conditions precedent to its right to assert its Claims in this case, including compliance with provisions of the Internal Revenue Code and the Employee Retirement Income Security Act of 1974 as amended ("ERISA").

6.     TDX and the Trust have established an Employee Health Plan ("the Plan") for employees of TDX and its subsidiaries, and qualifying Directors of TDX.

7.     TDX is the Plan Sponsor and Plan Administrator.

8.     ARM, Ltd. is an Illinois corporation which conducts substantial business in Alaska.

9.     In the state of Alaska, on June 1, 2005, Bering Sea Eccotech, Inc., a wholly owned TDX subsidiary, as original Plan Sponsor, entered into an Administrative Services Agreement with ARM ("Services Agreement") as Contract Administrator, to provide administrative services to the Plan, including, but not limited to, the processing and payment of benefits in accordance with the Plan.

10.     Subsequently, TDX took over as Plan Sponsor, and at all times relevant was the Plan Sponsor.

11.     Certain Trustees of the Trust, ARM, and Aetna Health Holdings, LLC ("Aetna") have been sued in the United States District Court for the Western District of Texas by Scott & White Memorial Hospital ("Hospital Litigation"), which Hospital alleges, in part, that the Trust has underpaid forty-six covered health care claims of a single Patient, a dependent of an employee of a TDX subsidiary, by $1,765,483.12 and that the Trust, ARM, and Aetna are each liable at least in this amount and for attorney's fees.

12.     ARM has claimed that under a provision of the Services Agreement it is entitled to have TDX and/or the Trust pay for (a) its costs of defense of the Hospital Litigation and (b) any judgment rendered against ARM.

13.     TDX and the Trust contend that they owe no defense or indemnification to ARM and that ARM, under another provision of the Services Agreement, owes TDX a defense, and indemnification if there is an adverse judgment against the Trustees in the Hospital Litigation.

## Jurisdiction and Venue

14.    TDX and the Trust have no adequate remedy at law for the declaratory relief they are seeking in this case and therefore seek a judicial determination of their rights, remedies, and duties in connection therewith. A judicial declaration on such issues is necessary and appropriate at this time so that TDX and the Trust may ascertain their rights, remedies, and duties arising out of the Services Agreement.

15.    Jurisdiction over TDX and the Trust's declaratory relief Claims in this case is conferred by AS 22.10.010(b), (g), and Civil Rule 57; and jurisdiction over their monetary relief Claims in this case is conferred by AS 22.10.010(a), (b).

16.    Venue in this case in the Third Judicial District for the State of Alaska at Anchorage is appropriate pursuant to AS 22.10.030 and ARCP 3.

## Additional Factual Background and Allegations Common to All Claims

17.    In 2014, a dependent ("Patient") of an employee of TDX Power, a TDX subsidiary, was diagnosed with a rare disease of paroxysmal nocturnal hemoglobinuria.

18.    It was determined by ARM that it was medically necessary to treat the Patient with infusions of a drug named Soliris, also known by its generic name Eculizumab.

19.    At the time Soliris was reputed to be the most expensive drug in the world.

20.    The Patient commenced treatment with Soliris in September, 2014 at Scott & White Hospital in Waco, Texas ("Hospital"), where the Patient's mother worked.

21.    The Hospital is a Participating Provider in an Aetna network, whereby the Hospital, through an agreement with Aetna ("Hospital Agreement") allegedly provides discounted rates for services to patients if they are part of a health plan that can access these rates through the Aetna network.

22.    ARM, at all times relevant, had a contract with Aetna (or its predecessor) which allowed it to access this Aetna network for a fee, purportedly giving TDX Plan members, including the Patient, the opportunity to obtain discounted rates.

23.    Soliris does not cure the condition suffered by the Patient but makes activities of daily life much more bearable. Without a bone marrow transplant, the Patient faced possible life-long infusion therapy with Soliris.

24.    ARM knew, or should have known, that because of the extraordinary expense of Soliris, and the possibility that treatment would continue for years, special case management was required with respect to the Patient's claims under the Plan.

25.    ARM initially hired or associated with Hines and Associates ("Hines") to review the cost of Soliris and provide medical case management of the Patient on behalf of ARM and the Trust.

26.    The Hines case manager claims she contacted the Hospital and obtained a cost quote of $12,200 per 600 mg infusion and $18,200 per 900 mg infusion from the Hospital.

27.    The Hines employee failed to document this alleged oral quote, but passed the alleged quote information on to ARM.

28.    ARM failed to obtain a written agreement from the Hospital for the alleged agreed pricing of Soliris either at the initiation of Patient treatment by the Hospital or at any time during the almost four (4) years of Patient treatment.

29.    When the Hospital billed the Plan for the first infusion treatments of Soliris in 2014, it billed $35,956.00 and later, $53,934 per treatment, for which the Hospital expected payment of $21,573.60 and $32,360.40 respectively (60% of amount billed) far greater than the alleged prior Hospital quote.

30.    Since 2015, the Hospital has claimed that (a) no one at the Hospital provided any such quote to Hines or ARM, and (b) the Hospital employee allegedly

providing the quote was not in a position at the Hospital whereby she would even have access to the cost of drugs the Hospital provides.

31. The Hospital has repeatedly and consistently demanded that it be paid based on 60% of the amount billed, the percentage set forth in the Hospital's Agreement with the network middleman, Aetna.

32. Upon learning in late 2014 that the Hospital had rejected ARM's repricing of the Soliris treatments, ARM made virtually no effort to obtain alternative, less expensive, sources for administration of Soliris to the Patient.

33. ARM failed to advise the Patient's mother that the TDX Plan specifically excludes "the part of an expense for care and treatment of an Injury or Illness that is in excess of the Usual, Customary and Reasonable charge" and that she should pursue alternative, less expensive, treatment for the Patient at another facility or physician's office.

34. When the Hospital continued to object to ARM's repricing of its Soliris treatments, ARM failed to even obtain a copy of the Hospital Agreement which contains a provision that actually binds the Hospital to comply with any Payer's appeal procedures, which would include the appeal procedures under the TDX Plan.

35. Even though the TDX Plan specifically excludes that part of an expense for treatment of an Illness that is in excess of the "Usual, Customary and Reasonable Charge," ARM did not adequately investigate the "Usual, Customary and Reasonable" charge for Soliris in the area around Waco, Texas or even in the geographical area of Texas.

36. ARM failed to advise the Hospital that the TDX Plan excluded that part of an expense for treatment of an Illness that is in excess of the "Usual, Customary and Reasonable" Charge, and it failed to inform the Hospital of the appeal procedures under the TDX Plan.

37.     When ARM provided the Hospital with an Explanation of Benefits ("EOB") for the Patient's Soliris treatments, ARM did not follow the procedures outlined in the TDX Plan.

38.     Instead, the Hospital continued to bill for the Patient's infusion treatments on the basis of its Hospital Agreement with Aetna, and ARM continued to reprice each Hospital claim and had the Trust pay a much-reduced amount.

39.     ARM failed to inform TDX and the Trust that it had repeatedly repriced the Hospital's claims for Soliris without the agreement of the Hospital.

40.     ARM failed to periodically advise TDX and the Trust of the mounting accumulation of the number and amounts of underpayment of claims by the Hospital.

41.     ARM knew that the Trust had in place stop loss insurance policies for 2014-17 with a yearly specific deductible of $100,000 for this Patient for 2014 and $450,000 for this Patient for 2015-17 – meaning that after the Trust paid $100,000 in claims for this Patient in 2014, and $450,000 in claims for this Patient in each following year, the Trust would be reimbursed by the stop loss carrier for any claims in excess of the specific deductible.

42.     For each of the years 2014-17, the Trust paid the Hospital for its services in excess of the Patient deductible.

43.     In February of 2017, the three then Trustees of the Trust, TDX Power, Inc., a subsidiary of TDX, ARM and the ARM network provider, then Coventry Health Care, and related companies, were sued by the Hospital in state court in Texas, which action was later removed to the United States District Court for the Western District of Texas ("Hospital Litigation").

44.     The Hospital initially alleged in the Hospital Litigation that under its Hospital Agreement with Coventry (now Aetna), and ARM's contract with Coventry (now Aetna), it was entitled to payment for each of the Patient's health care claims in

accordance with the Hospital Agreement, which it later claimed was at a discount rate of 60% of its billings.

45. After the state court action was removed to federal court, the Hospital on June 22, 2017 filed an amended Complaint which drops TDX Power as a defendant, but alleges breach of contract claims against Aetna, ARM, and the three Trustees seeking monetary damages now in an amount of $1,765,483.12 for underpayment of forty-six claims, and seeks a declaration that Aetna, ARM, and the three Trustees are all obligated to pay the Hospital for all health care services provided to the Patient at the contractually agreed rates in the Hospital Agreement, and seeks attorneys' fees against each of these defendants.

46. On June 15, 2017, an attorney representing ARM in the Hospital Litigation sent a letter to TDX and the Trust's attorney making a formal request that the Trust cover all of ARM's costs and expenses in the Hospital Litigation under Section 10(A) of the Services Agreement between the Trust and ARM. A true and correct copy of such letter is attached as Exhibit A.

47. Section 10(A) of the Services Agreement provides:

> A. The Plan Sponsor agrees to indemnify, hold harmless and defend the Contract Administrator against any expense, loss, lawsuit, settlement costs, penalty, damage, liability, claim or judgment, including reasonable attorneys' fees, arising out of or resulting from the Contract Administrator's performance of its services hereunder where the Contract Administrator has adhered to the framework of policies, interpretations, rules, practices and procedures made or established by the Plan Sponsor or has otherwise performed its services without negligence or willful misconduct and in accordance with industry practices.

48. In a July 12, 2017 letter response to the letter from the ARM attorney, TDX and the Trust's attorney on behalf of the Trust agreed to indemnify ARM for costs, expenses, and attorneys' fees related to the Hospital litigation, but only under a specific reservation of rights. The TDX and Trust's attorney specifically stated in relevant part:

Case 3:18-cv-00219-HRH   Document 1-1   Filed 09/24/18   Page 10 of 22

Because the Trust has not completed its investigation of this matter, and because the parties have not completed any discovery in the Lawsuit, the Trust expressly reserves its right to contest its obligation under Section 10 (A) if it should become aware of facts or evidence that ARM did not perform the services in accordance with the framework of policies, interpretations, rules, practices and procedures made or established by the Trust, negligently performed the services, engaged in willful misconduct, or otherwise failed to perform the services in accordance with industry practices.

A true and correct copy of the Trust attorney letter is attached as Exhibit B.

49. After the July 12, 2017 Trust attorney letter, the Parties engaged in extensive discovery, including the May 15, 2018 deposition of Barbara Kolometz, the claims manager for ARM who took on the responsibility for management of the Patient's claims for services by the Hospital, and the November 6, 2017 deposition of Kari Harper, the nurse case manager for Hines who allegedly orally obtained from the Hospital the special agreed pricing for Soliris that ARM used in repricing the Soliris infusions the Hospital supplied to the Patient.

50. It was only after the review of these depositions and related documents that TDX and the Trust became aware of the facts and evidence set forth in preceding Paragraphs establishing that ARM had not performed services in accordance with the framework of policies, interpretations, rules practices and procedures made or established by the Trust, negligently performed its services, engaged in willful misconduct, and otherwise failed to perform its services in accordance with industry practices.

51. Section 10(B) of the Services Agreement provides:

B. The Contract Administrator shall defend, hold harmless and indemnify the Plan Sponsor, and its officers and directors against any expense, loss, lawsuit, settlement costs, penalty damage, liability, claim or judgment, including reasonable attorney's fees, resulting from the Contract Administrator's failure to comply with applicable laws and/or failure to maintain licenses or certifications necessary to perform obligations under this Agreement and/or the Contract Administrator's gross negligence,

willful misconduct or lack of good faith or want of reasonable and ordinary care.

Although the Services Agreement was terminated by the Trust effective November 30, 2017, Section 10(C) specifically provides that the indemnifications under Sections 10(A) and 10 (B) survive the termination of the Agreement but only for acts performed prior to termination of the Agreement.

52.     It was only after the review of the depositions of ARM employee Barbara Kolometz and Hines employee Kari Harper, and other discovery-related depositions and documents, that TDX and the Trust became aware of the facts and evidence set forth above which establish that ARM had been grossly negligent in how it performed services prior to termination of the Agreement with respect to the Hospital claims, that it did not handle the claims in good faith, and that it lacked reasonable and ordinary care in the handling of the claims.

## TDX and Trust Claims against ARM

### Count I

[TDX and Trust Claim against ARM for declaratory judgment that the Trust and/or its Trustees do not have to defend ARM against the Hospital claims in the Hospital Litigation or indemnify ARM if the Hospital is awarded a monetary judgment against ARM]

53.     TDX and the Trust repeat and incorporate by reference all of their allegations, statements, and pleadings contained in the preceding and following Paragraphs.

54.     ARM claims that Trust is required to pay all of ARM's costs and expenses incurred in the Hospital Litigation solely based on Section 10 (A) of the Services Agreement between ARM and the Trust.

55.    TDX and the Trust claim that ARM is not entitled to either defense or indemnification under Section 10 (A) of the Services Agreement because TDX and the Trust, during discovery, and as part of its investigation of the above referenced matters, have discovered facts and evidence that ARM was negligent, did not perform its services within the framework of policies, interpretations, and rules practice and procedures of the Trust, and did not perform its services in accordance with industry practices.

56.    There is an actual controversy between TDX and the Trust and ARM as to whether ARM is entitled to defense from TDX and the Trust for ARM's costs and expenses in the Hospital Litigation and for indemnification if the Hospital obtains a judgment against ARM.

57.    As a result, TDX and the Trust are entitled to a declaratory judgment that it has no obligation to defend or indemnify ARM in the Hospital Litigation.

<u>Count II</u>

<u>[TDX and Trust Claim against ARM for declaratory judgment that TDX and the Trust are entitled to defense and indemnification from ARM in the Hospital Litigation]</u>

58.    TDX and the Trust repeat and incorporate by reference all of their allegations, statements, and pleadings contained in the preceding and following Paragraphs.

59.    Section 10(B) of the Services Agreement between TDX and ARM obligates ARM to defend, hold harmless, and indemnify TDX and the Trust and its officers and directors against any expense, loss, lawsuit, liability, claim or judgment, including reasonable attorney's fees resulting from ARM's gross negligence, willful misconduct, lack of good faith, or want of reasonable and ordinary care.

60.    TDX and the Trust claim that they are entitled to defense and indemnity with respect to the Hospital Litigation based on the allegations in the preceding Paragraph.

61.     ARM, by its claim that it is entitled to defense and indemnity from TDX and the Trust, disputes that TDX and the Trust are entitled to defense and indemnity in the Hospital Litigation.

62.     There is an actual controversy between TDX and the Trust and ARM as to whether TDX and the Trust are entitled to a defense paid by ARM for TDX and the Trust's costs and expenses in the Hospital Litigation and for indemnification if the Hospital obtains a judgment against the Trust.

63.     As a result, TDX and the Trust are entitled to a declaratory judgment that ARM has an obligation to defend and indemnify TDX and the Trust in the Hospital Litigation.

<u>Count III</u>

<u>[TDX and the Trust's Claim against ARM for Unjust Enrichment and reimbursement of all amounts paid by TDX and the Trust to ARM]</u>

64.     TDX and the Trust repeat and incorporate by reference all of their allegations, statements, and pleadings contained in the preceding and following Paragraphs.

65.     Attorneys representing ARM in the Hospital Litigation have submitted to the Trust for payment billings for time and expenses in the Hospital Litigation in the amount of $269,924.73 to date, $219,940.67 of which have been paid by the Trust, in part from loans from TDX because the small health benefit Trust does not have the ability to pay both the Patient's extraordinary claims and the excessive billings of the ARM attorneys, as well as the billings of the Trust's own attorneys.

66.     TDX and the Trust paid the attorneys for ARM because until recently, they were unaware of the acts and omissions of ARM, set forth above, constituting administration of the TDX Plan in a negligent and grossly negligent manner.

67. ARM knows that it is not entitled to the benefit of having its attorney's fees and costs paid by TDX or the Trust.

68. ARM cannot in justice, equity, fairness, and good conscience, retain these benefits it unjustly received to the detriment of TDX and the Trust.

69. Based on the conduct of ARM set forth more fully in the preceding Paragraphs, TDX and the Trust, under the Services Agreement and as a matter of unjust enrichment, are entitled to reimbursement of all fees and expenses that TDX and the Trust have paid to the ARM attorneys, in an amount to be proven at trial.

## Count IV

### [TDX and the Trust's Claim Stems from ARM's Unfair and Deceptive Trade Practices in Violation of AS 45.40.471]

70. TDX and the Trust repeat and incorporate by reference all of their allegations, statements, and pleadings contained in the preceding and following Paragraphs.

71. AS 45.50.471 is Alaska's Unfair Trade Practice Act ("AUTPA"), which sets forth unfair methods of competition and unfair or deceptive acts or practices that have been declared to be unlawful.

72. Pursuant to AS 45.50.471(b), "The terms 'unfair methods of competition' and 'unfair or deceptive acts or practices' include, *but are not limited to*, the following acts (emphasis added):

> (3) causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval, or another person's affiliation, connection, or association with or certification of goods or services;

> . . .

> (10) making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

. . .

(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged;

73.     In the course of ARM's dealings with TDX and the Trust as set forth in the preceding Paragraphs, ARM acted unfairly and deceptively through and including, but not limited to, the following acts:

a.     Claiming it was entitled to a defense and indemnity from TDX and the Trust, when it knew, in fact, that it had repriced the Soliris drug infusion treatments for the Patient without the agreement of the Hospital, without following industry procedures and without following the Plan;

b.     Refusing and failing to promptly, fairly, and diligently follow the procedures in the TDX Plan and refusing and failing to promptly, fairly, and diligently advise TDX and the Trustees that it was not following procedures in the TDX Plan, and

c.     Withholding from the Trust, TDX, and the Trust/TDX' stop loss insurance carriers relevant information about the repricing of Soliris, including the Hospital's rejection of the repricing and the accumulation of forty-six underpayment claims by the Hospital amounting to $1,765,483.12, thereby denying the Trust the opportunity to seek to resolve the Hospital claims for underpayment prior to the initiation of the Hospital Litigation.

74.    In acting unfairly and deceptively, ARM committed an unfair or deceptive business practice as that is defined in the AUTPA.

75.    Pursuant to AS 45.50.531, "[a] person who suffers an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by AS 45.50.471 may bring a civil action to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater."

76.    Accordingly, such actions and inactions, as well as the other acts and omissions by ARM alleged in the preceding Paragraphs, entitle TDX and the Trust to recover (a) treble damages from ARM (i) of at least the amount of the attorney's fees and costs paid by TDX or the Trust in the Hospital Litigation, which is currently $219,940.67 – or $659,822.01 trebled and (ii) for any judgment awarded against TDX or the Trust in the Hospital Litigation, the exact amount of which will be proven at the trial, plus (b) all reasonable attorney's fees and costs incurred pursuant to AS 45.50.537.

## Count V

## [TDX and Trust Claim against ARM for Punitive Damages]

77.    TDX and the Trust repeat and incorporate by reference all of their allegations, statements, and pleadings contained in the preceding and following Paragraphs.

78.    ARM has materially breached its express, implied-in-fact, and implied-in-law covenant of good faith and fair dealing in the Services Agreement by unreasonably, unfairly, deceptively, and in bad faith:

> a.    Claiming it was entitled to a defense and indemnity from TDX and the Trust, when it knew, in fact, that in the administration of the Plan it failed to follow industry procedures and the TDX Plan;

> b.    Refusing and failing to promptly, fairly, and diligently follow the procedures in the TDX Plan and refusing and failing to promptly,

fairly, and diligently advise TDX and the Trustees that it was not following procedures in the TDX Plan, and

    c.    Withholding from the Trust, TDX, and the Trust/TDX stop loss insurance carriers relevant information about the repricing of Soliris, and the accumulation of forty-six underpayment claims by the Hospital amounting to $1,765,483.12 in claims, thereby denying the Trust the opportunity to seek to resolve the Hospital claims for underpayment prior to the initiation of the Hospital Litigation.

79.    Such actions and inactions, as well as the other acts and omissions by ARM alleged in the preceding Paragraphs, entitle TDX and the Trust to recover punitive damages from ARM in an amount sufficient to punish ARM for such wrongful conduct and deter similar conduct by ARM in the future, the exact amount of which will be proven at the trial in accordance with the requirements of AS 09.17.020.

<u>Prayer For Relief</u>

Wherefore, TDX and the Trust request that this Court provide them with the following relief:

    A.    Enter the final declaratory and monetary judgments in their favor on their foregoing Claims and that are requested in each of them.

    B.    Enter an award of reasonable attorney's fees pursuant to Section 10 (B) of the Services Agreement, and /or AS 45.50.537, or alternatively, enter an award of attorney's fees pursuant to Civil Rule 82.

    C.    Provide such other and further legal and equitable judgments and relief in their favor as may be just and proper under the circumstances.

RESPECTFULLY SUBMITTED at Anchorage, Alaska this 21st day of August 2018.

HOLMES WEDDLE & BARCOTT, P.C
Co-Counsel for Tanadgusix Corporation and
Tanadgusix Corporation Health and Welfare
Trust.

By _____
Natalie A. Cale
Alaska Bar No. 0006037

LAW OFFICE OF DOUGLAS F.
STRANDBERG, P.S.
Co-Counsel for Tanadgusix Corporation and
Tanadgusix Corporation Health and Welfare
Trust.

By _____
Douglas F. Strandberg
Alaska Bar No. 7605056

<u>Certificate of Service</u>

This is to certify that on this 21st day of
August 2018, a true and correct copy of the
foregoing was sent by the method indicated to:

Steve Rogovin
Meltzer, Purtill & Stelle LLC
300 South Wacker Drive, Suite 2300
Chicago, IL 60606

_____
Vanessa Hope
Holmes Weddle & Barcott

☒ Mailed, first-class mail
☐ Hand delivered
☐ Faxed to (312) 987-9854
☐ E-mailed to

Complaint
*Tanadgusix Corporation and Ron Philemonoff, Jeanette Matthews, Robert Dean Hughes, Benjamin English, Larry*
*Cooper, and John Lyons, Trustees of the Tanadgusix Health and Welfare Trust v. ARM, Ltd*
Case No. 3AN-18-_____ Civ.
Page No. 17 of 18

MELTZER, PURTILL & STELLE LLC

ATTORNEYS AT LAW

MPS LAW

SCHAUMBURG • CHICAGO

1515 EAST WOODFIELD ROAD
SECOND FLOOR
SCHAUMBURG, ILLINOIS 60173-5431

TELEPHONE (847) 330-2400
FACSIMILE (847) 330-1231

300 SOUTH WACKER DRIVE
SUITE 2300
CHICAGO, ILLINOIS 60606-6704

TELEPHONE (312) 987-9900
FACSIMILE (312) 987-9854

www.mpslaw.com

File Number:   16397-011
Direct Dial:   312-461-4304
E-mail:   srogovin@mpslaw.com

June 15, 2017

**By Email and Regular Mail**

Chris Schwegmann, Esq.
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201

Re:   **Notice of Request for Indemnification**
**Scott & White Memorial Hospital v. Coventry** *et al.*
**Civil Action No. 17-cv-75**

Chris:

As you know, despite our efforts to convince Scott & White Memorial Hospital that ARM, Ltd. ("ARM") is not an appropriate defendant in the above-referenced action (the "Litigation"), the Hospital has opted to keep ARM in the case and re-state its legal claims against ARM in an amended complaint.

Given the Hospital's decision, it is clear that ARM's participation in the Litigation, and its costs and expenses, will unfortunately continue. As such, please be advised that ARM hereby makes a formal request on the Tanadgusix Corp Health & Welfare Trust and its affiliates (collectively, the "Trust") for all relief provided under Section 10(A) of the Administrative Services Agreement dated as of June 1, 2005 (the "ASA").

Notwithstanding the foregoing, it remains my client's understanding that the Trust's stop-loss insurance policy should cover the charges at issue in the Litigation, and that the involvement of that insurer should be able to assist in bringing the payment dispute at issue in the Litigation to a resolution. I would ask that you please let me know where things stand in the Trust's communication with its stop-loss insurer.

Very truly yours,

Steve Rogovin

{16397: 011; 02138117.DOC : }

Exhibit A
Page 1 of 1

# LYNN PINKER COX HURST

**CHRIS SCHWEGMANN**
Partner

D 214 981 3835
F 214 981 3839

cjs@lynnllp.com

2100 Ross Avenue
Suite 2700
Dallas, Texas 75201
**lynnllp.com**

July 12, 2017

**By Email**

Steve Rogovin
MPSLAW | Meltzer, Purtill & Stelle LLC
300 South Wacker Drive
Suite 2300
Chicago, IL 60606

Re:     Notice of Request for Indemnification

Dear Steve,

I am writing in response to ARM, Ltd.'s ("ARM") request for indemnification, dated June 15, 2017, on behalf of the Tanadgusix Corp Health & Welfare Trust and its affiliates (collectively the "Trust"), for costs, expenses, and all other relief provided under Section 10(A) of the Administrative Services Agreement (the "ASA"). Specifically, ARM seeks indemnification for costs and expenses related to ARM's participation in *Scott & White Memorial Hospital v. Coventry, et. al*, Civil Action No. 17-cv-75, pending in the United States District Court for the Western District of Texas (the "Lawsuit").

Section 10(A) of the ASA requires the Trust "to indemnify, hold harmless and defend [ARM] against any expense, loss, lawsuit, settlement costs, penalty, damage, liability, claim or judgment, including reasonable attorneys' fees, arising out of or resulting from [ARM's] performance of its services hereunder where [ARM] has adhered to the framework of policies, interpretations, rules, practices and procedures made or established by [the Trust] or has otherwise performed its services without negligence or willful misconduct and in accordance with industry practices." Because the Trust has not completed its investigation of this matter, and because the parties have not completed any discovery in the Lawsuit, the Trust expressly reserves its rights to contest its obligation under Section 10(A) if it should become aware of facts or evidence that ARM did not perform the services in accordance with the framework of policies, interpretations, rules, practices and procedures made or established by the Trust, negligently performed the services, engaged in willful misconduct, or otherwise failed to perform the services in accordance with industry practices.

The Trust acknowledges, however, receipt of ARM's request for indemnification and agrees to indemnify ARM for costs, expenses, and attorneys' fees related to the Lawsuit in

1

Exhibit B
Page 1 of 2

accordance with its reservation of rights, and further consents to the retention of your law firm to defend the Lawsuit on behalf of ARM. As soon as convenient, please provide a litigation budget for this case to Bob Odenheimer, Director, Human Resources, Tanadgusix Corporation, 3601 C Street, Suite 1000, Anchorage, Alaska, with a copy to me. Please also submit your monthly invoices to Mr. Odenheimer at that address.

Regards,

Christopher J. Schwegmann

CJS