WO            IN THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF ALASKA


TANADGUSIX CORPORATION, et al.,    )
                                    )
                       Plaintiffs,  )
                                    )
   vs.                              )
                                    )
ARM, LTD., an Illinois corporation, HINES )
& ASSOCIATES, INC., an Illinois     )
corporation, and UNIMERICA INSURANCE )
COMPANY, a Wisconsin corporation,   )
                                    )   No. 3:18-cv-0219-HRH
                       Defendants.  )
_____)

## O R D E R

### Motion to Compel

Plaintiffs Tanadgusix Corporation ("TDX") and the Trustees of the Tanadgusix Corporation Health and Welfare Trust ("the Trust") moved to compel defendant Unimerica Insurance Company to produce 32 documents.[1] In the alternative, plaintiffs moved for an order compelling Unimerica to produce the documents for an in camera review.[2] Unimerica opposed the motion to compel[3] and filed its own motion for an in camera review of the

---

[1]Docket No. 119.

[2]Docket No. 119.

[3]Docket No. 122.

-1-

documents in dispute.[4] The court granted Unimerica's motion,[5] and Unimerica has timely submitted the documents in dispute to the court for an in camera review.[6]

Background

Unimerica provided stop loss coverage to the TDX Health Plan from 2016 through the end of 2018, though the benefit period for the Policy extended back through 2015. During the time the Policy was in effect, TDX became involved in litigation with a Texas hospital and ARM, TDX's third-party plan administrator, over the pricing of a plan beneficiary's Soliris treatment. TDX provided notice of the hospital litigation to Unimerica on April 4, 2017. In September 2018, TDX requested that Unimerica attend a mediation in the Texas hospital litigation, a request that Unimerica refused. At some point thereafter, Unimerica decided to review the underwriting on the TDX Stop Loss Policy.[7] And, on January 4, 2019, Unimerica advised TDX that it was invoking the "Misrepresentation Clause" in the Stop Loss Policy because misrepresentations had been made regarding the pricing of the beneficiary's Soliris treatment.[8] Unimerica advised that it was amending the Stop Loss Policy to change the beneficiary's laser and to exclude 2015 from the Benefit

---

[4] Docket No. 124.

[5] Docket No. 127.

[6] Docket No. 128.

[7] Exhibit 11 at 1, Plaintiffs' Motion to Compel, Docket No. 119.

[8] Exhibit 12 at 1-2, Plaintiffs' Motion to Compel, Docket No. 119.

Period.[9] A formal Explanation of Benefits was issued on January 28, 2019, in which Unimerica denied $2,212,086.67 in claims for the beneficiary.[10]

One of the central questions in this case is whether the Soliris pricing was material to Unimerica's policy underwriting. Plaintiffs thus sought discovery related to Unimerica's underwriting process. Unimerica has so far produced approximately 25,000 pages of discovery.[11] Plaintiffs contend that the discovery it has received so far has "revealed a substantial likelihood that Unimerica acted in bad faith when it belatedly attempted to amend an expired policy[.]"[12] Unimerica has withheld 32 email exchanges and documents on the grounds that the documents in question are privileged. All of the withheld documents were drafted or exchanged prior to January 4, 2019. As such, plaintiffs contend that it is likely that the withheld documents and emails will explain why Unimerica amended the Stop Loss Policy, chose to raise the patient's laser, and eliminated 2015 from the Benefits Period.

Unimerica contends that the 32 documents and emails are privileged because they contain legal advice from in-house counsel and/or were prepared in response to TDX's threat of litigation. Plaintiffs contend that Unimerica has improperly withheld these documents because there was no threat of litigation until after Unimerica issued the formal EOB on

---

[9]Id. at 2-3.

[10]Exhibit 13 at 1, Plaintiffs' Motion to Compel, Docket No. 119.

[11]Declaration of Bret Finkelstein [etc.] at 2, ¶ 5, Docket No. 123.

[12]Plaintiffs' Motion to Compel at 2, Docket No. 119.

January 28, 2019. Plaintiffs also contend that these 32 documents are discoverable because they have alleged that Unimerica has acted in bad faith, which, according to plaintiffs, means that Unimerica has waived any attorney-client privilege.

Discussion

"The availability of the attorney-client privilege in a diversity case is governed by state law." KL Group v. Case, Kay & Lynch, 829 F.2d 909, 918 (9th Cir. 1987). "The attorney-client privilege allows a client to refuse to disclose, and to prevent others from disclosing, confidential communications between the client and his attorney . . . made for the purpose of facilitating the rendition of legal services to the client." Langdon v. Champion, 752 P.2d 999, 1001 (Alaska 1988). The "'party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication.'" United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009) (quoting United States v. Bauer, 132 F.3d 504, 507 (9th Cir. 1997)).

As an initial matter, plaintiff argues that all of the documents in question should be produced because this case involves allegations of bad faith and that "[i]n cases against insurance companies involving allegations that an insurer breached its duty to adjust a claim in good faith, courts have . . . found a presumption that the attorney client privilege does not apply in the claims adjusting process."[13] Plaintiffs argue that this court has adopted the Cedell standard, which is derived from a Washington Supreme Court case, Cedell v. Farmers

---

[13]Plaintiffs' Motion to Compel at 14, Docket No. 119.

Insurance Company of Washington, 295 P.3d 239 (Wash. 2013).  There, the court held that in first party insurance bad faith cases,

> there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process, and that the attorney-client and work product privileges are generally not relevant.  However, the insurer may overcome the presumption of discoverability by showing its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own potential liability; for example, whether or not coverage exists under the law.

Id. at 246.  The Cedell court went on to state that if the insurer overcomes the presumption, then "the insurance company is entitled to an in camera review of the claims file, and to the redaction of communications from counsel that reflected the mental impressions of the attorney to the insurance company, unless those mental impressions are directly at issue in its quasi-fiduciary responsibilities to its insured."  Id.  Here, because the court has already decided to conduct an in camera review of the emails and documents in dispute, it is irrelevant whether the court has adopted the Cedell standard.  If the court determines that there is no basis for Unimerica to claim privilege as to the documents in question, then the court will compel Unimerica to produce them.

As a second preliminary matter, the parties have different views as to when there was first a threat of litigation from TDX.  This dispute matters because Unimerica has contended that some of the documents in question were prepared in response to TDX's threat of litigation, which makes those documents privileged.  Plaintiffs, however, contend that none

of the documents could have been prepared in response to a threat of litigation because all of them were prepared before January 28, 2019, which was when Unimerica issued the formal EOB. Plaintiffs contend that it was not until Unimerica issued the formal EOB that there was a threat of litigation by TDX. Unimerica, on the other hand, contends that there was a threat of litigation from August 6, 2018, the date on which TDX advised Unimerica of the Texas hospital litigation and requested that Unimerica attend a mediation in that litigation. Plaintiffs dispute that there was anything in TDX's communications with Unimerica at that time that would have suggested that TDX was contemplating litigation against Unimerica. However, a September 4, 2018, letter from TDX's attorneys to Unimerica, urging Unimerica to reconsider its position regarding attendance at the mediation, could be viewed as containing a threat of litigation.[14] In that letter, TDX's counsel asserted that there was no question that Unimerica would be liable under its policy and that "an Alaska court will look with extreme disfavor on [its] current position under all the circumstances."[15] The court is mindful that, as plaintiffs point out, Local Rule 88(d) for the Western District of Texas, the district in which the hospital mediation was held, requires the presence of all parties at a mediation, including any insurance carriers. But, the Texas local rule was not the focus of the September 4, 2018 letter. The focus of that letter was Unimerica's liability under the TDX Stop Loss Policy and how Unimerica's conduct would

---

[14]Exhibit 10, Plaintiffs' Motion to Compel, Docket No. 119.

[15]Id. at 3-4.

-6-

be viewed under Alaska's good faith and fair dealing law. It would not have been unreasonable for Unimerica to infer from the September 4, 2018, letter that TDX was contemplating litigation against it. Thus, the relevant date, for purposes of whether there was a threat of litigation by TDX, is September 4, 2018.

As a third preliminary matter, plaintiff argues that any attorney-client privilege as to the 32 documents has been waived under the crime-fraud exception. "One of the widely recognized exceptions to utilization of the attorney-client privilege is that the privilege cannot be used to protect a client in the perpetration of a crime or other evil enterprise in concert with the attorney." United Services Auto. Ass'n v. Werley, 526 P.2d 28, 31 (Alaska 1974). "[A] court c[an] grant in camera review in its discretion upon a showing of '. . . a factual basis adequate to support a good faith belief by a reasonable person . . . that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.'" Mogg v. Nat'l Bank of Alaska, 846 P.2d 806, 814 (Alaska 1993) (quoting Central Constr. Co. v. Home Indem. Co., 794 P.2d 595, 599 (Alaska 1990)). Here, after reviewing the documents in question, the court finds that the crime-fraud exception does not apply. The documents do not show that Unimerica was utilizing its in-house counsel's services in furtherance of an ongoing fraudulent scheme.

That does not necessarily mean, however, that Unimerica does not have to produce the documents in dispute. The question remains as to whether Unimerica has properly asserted the attorney-client privilege as to these documents. As to that question, the court

finds that Unimerica has properly asserted the attorney-client privilege as to all 32 documents.

Several of the documents in question (Unimerica Privilege Log 48, 60, 155, 168, 169) are drafts of the letter that Unimerica ultimately sent to TDX on January 4, 2019 invoking the Misrepresentation Clause. Bret Finkelstein, one of Unimerica's lawyers, avers that this "draft was prepared at the request of counsel and with input from counsel."[16] Thus, these documents are privileged. See In re Premera Blue Cross Customer Data Security Breach Litig., 329 F.R.D. 656, 662 (D. Or. 2019) ("[a] draft prepared at the request of counsel . . . is subject to the attorney-client privilege").

Several of the documents (Unimerica Privilege Log 66, 97, 98, 99, 100, 101, 135, 136) are related to an email that Unimerica employee, Mary Erickson, prepared to send to Victoria Evans of PBS, TDX's third-party administrator. The documents include both drafts of the Evans email and emails from Erickson in which she sought legal advice on the drafts. The drafts were "prepared at the request of counsel[,]"[17] thereby making them privileged, and the emails seeking legal advice are also privileged.

Several of the documents (Unimerica Privilege Log 74, 75, 96, 102, 103, 104, 105, 106, 108, 109, 110, 111, 112, 113, 114, 115) are emails (some with attachments) in which

---

[16]Finkelstein Declaration at 4, ¶ 10(i), Docket No. 123.

[17]Id. at 4-5, ¶ 10(iv).

employees were seeking legal advice from in-house counsel. These documents are plainly privileged.

The remaining documents (Unimerica Privilege Log 57, 58, 166) are also privileged. The first two documents include a legal discussion about the attachment to the email in question. The third document is privileged as it is a draft of a letter prepared by in-house counsel.

## Conclusion

Plaintiffs' motion to compel[18] is denied. After its <u>in camera</u> review, the court finds that the 32 documents in dispute are privileged and have been properly withheld by Unimerica.

DATED at Anchorage, Alaska, this 15th day of July, 2021.

/s/ H. Russel Holland
United States District Judge

---

[18]Docket No. 119.